ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| SUCESIÓN JOSÉ SANTIAGO ÁLVAREZ t/c/p JOSÉ SANTIAGO, compuesta por FLOR MARÍA SANTIAGO MOLINA, JOSÉ LUIS SANTIAGO MOLINA, CARMEN LYDIA SANTIAGO MOLINA, ANDRÉS SANTIAGO MOLINA, CRISTÓBAL SANTIAGO MOLINA y NILDA SANTIAGO MOLINA,<br><br>Apelante,<br><br>v.<br><br>JOSÉ LUIS ARROYO MEDINA; su esposa BRENDA SÁNCHEZ VELÁZQUEZ, y la sociedad legal de bienes gananciales por ellos compuesta; la sucesión de MARIANO SANTIAGO DEL VALLE, compuesta por MARILYN SANTIAGO VEGA, y SUCESIÓN FLORA SANTIAGO ÁLVAREZ compuesta por CARMEN VEGA SANTIAGO, JUAN A. VEGA SANTIAGO, MARÍA M. VEGA SANTIAGO, WILMA S. VEGA SANTIAGO y LUZ M. VEGA SANTIAGO,<br><br>Apelada. | KLAN202400683 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de Humacao.<br><br>Civil núm.: HU2022CV00106.<br><br>Sobre: sentencia declaratoria. |

Panel integrado por su presidente, el juez Hernández Sánchez, la jueza Romero García y la jueza Martínez Cordero.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 17 de septiembre de 2024.

La sucesión de José Santiago Álvarez, también conocido, como José Santiago, compuesta por **Flor María Santiago Molina, José Luis Santiago Molina, Carmen Lydia Santiago Molina, Andrés Santiago Molina, Cristóbal Santiago Molina** y **Nilda Santiago Molina** (parte

Número identificador

SEN2024_____

apelante o sucesión de José Santiago), presentó su recurso el 18 de julio de 2024. Nos solicita que revoquemos la sentencia sumaria emitida por el Tribunal de Primera Instancia, Sala Superior de Humacao, el 26 de junio de 2024, notificada el 28 de junio de 2024. En ella, el tribunal declaró con lugar la solicitud de sentencia sumaria presentada por la parte aquí apelada, y validó el contrato de compraventa a favor del matrimonio Arroyo-Sánchez.

Por los fundamentos expuestos a continuación, **confirmamos** la sentencia apelada.

I

El 2 de febrero de 2022, la sucesión de José Santiago presentó la demanda que dio origen al presente caso[1]. Mediante una solicitud de sentencia declaratoria, instó al Tribunal de Primera Instancia a que declarase nulas dos escrituras relacionadas a un inmueble ubicado en el Municipio de Yabucoa[2]. Ello, por ambas ser contrarias a lo dispuesto en los Artículos 21, 23, y 24 de la Ley Núm. 75-1987, intitulada *Ley Notarial de Puerto Rico,* 4 LPRA secs. 2039, 2041, 2042, respectivamente, y el Reglamento Notarial de Puerto Rico, Artículos 32, 33, y 35, 4 LPRA Ap. XXIV. Además, solicitó al foro primario que realizara cualquier otro pronunciamiento que procediera en derecho.

La parte apelada, **José Luis Arroyo Medina**; su esposa **Brenda Sánchez Velázquez**, y la sociedad legal de bienes gananciales compuesta por ellos (matrimonio Arroyo-Sánchez), presentó su contestación a la

---

[1] *Véase*, apéndice del recurso, a las págs. 33-36.

[2] Se trata de la siguiente finca:

> Rústica: Predio de terreno ubicado en el barrio Playa Guayanés, Sector Calambreñas del término municipal de Yabucoa, Puerto Rico, con una cabida aproximada de cuatro a cuatro y media cuerdas (4 a 4 ½ cdas). Equivalentes a quince mil setecientos veintiún metros con sesenta centésimas de otro a diecisiete mil seiscientos ochenta y seis con ocho décimas de otros (15,721.60 m. a 17,686.8 m). En lindes por el NORTE con Tomás Martínez; por el SUR con la Sucesión de Ernesto Carrasquillo; por el ESTE con Antonio Roig y Sucesores y por el OESTE con Enrique Pérez. Transcurre por el mismo un camino municipal pavimentado que grava la propiedad. Posee un número de codificación 75-353-000-004-33-998. Inscrita al Folio 0163, Tomo 279 de Yabucoa; Finca núm.: 17361.

*Íd.*, a la pág. 34.

demanda junto con una reconvención el 4 de agosto de 2023[3]. En su escrito, alegó que entre las partes se había perfeccionado un contrato de compraventa válido, por el mismo no ser contrario a la ley, la moral y el orden público. Por tanto, solicitó al tribunal que ordenara a la sucesión de José Santiago a responder por evicción y defectos ocultos.

Luego de varias incidencias procesales, el 24 de marzo de 2023, se celebró una vista evidenciaría en la que **la parte apelada se allanó a que se decretase la nulidad de las escrituras**. Por tanto, el Tribunal de Primera Instancia dictó una sentencia parcial el 7 de abril de 2023, notificada y archivada en autos el 10 de abril de 2023[4]. En su sentencia parcial, el foro primario declaró nulas las siguientes escrituras: la Escritura Núm. 5 del 25 de enero de 2005, sobre segregación y compraventa, y la Escritura Núm. 28 del 25 de abril de 2005, sobre donación. Ambas escrituras fueron otorgadas ante el Lcdo. Natividad Márquez Pérez.

A su vez, el foro primario ordenó a las partes otorgantes que retiraran las escrituras presentadas en el Registro de la Propiedad y que se presentara la referida sentencia para ser calificada por el Registrador.

Posteriormente, el 22 de junio de 2023, la parte apelada presentó una moción de sentencia sumaria[5]. Planteó que en la demanda nada se alegó en cuanto a que, ante el decreto de nulidad de las escrituras por el incumplimiento con los requisitos de forma, el negocio jurídico entre las partes fuere nulo. Sostuvo que en la demanda lo único que se solicitó fue la nulidad de la Escritura Núm. 5 del 25 de enero de 2005, y de la Escritura Núm. 28 del 25 de abril de 2005. Por tanto, habiéndose decretado la nulidad de ambos instrumentos y habiéndose dictado la sentencia parcial de conformidad, lo que procedía era compeler a los demandantes a que comparecieran en escrituras públicas, para darle formalidad al negocio jurídico subyacente.

---

[3] *Véase*, apéndice del recurso, a las págs. 47-51.

[4] *Íd.*, a las págs. 74-79.

[5] *Íd.*, a las págs. 80-104.

La parte apelada expuso los hechos que a su parecer estaban incontrovertidos. Entre ellos, que en la transacción efectuada entre las partes mediante la Escritura Núm. 5, se cumplió con los requisitos de consentimiento, objeto y causa requeridos en los contratos para ser válidos. Añadió que la transacción de compraventa efectuada no resultaba contraria a la ley, a la moral ni al orden público, por lo que el negocio jurídico se sostenía[6].

Por su parte, el 19 de julio de 2023, la sucesión de José Santiago presentó su oposición a la solicitud de sentencia sumaria. En esencia, expuso que, al tratarse de las mismas partes y bienes, se debía inferir que con la Escritura Núm. 28 otorgada el 25 de abril de 2005, las partes estaban dejando sin efecto la Escritura Núm. 5 otorgada el 25 de enero de 2005. Lo anterior, en atención a que ambas escrituras eran contradictorias entre sí. Arguyó que, en todo caso, lo que quedó configurado fue una donación onerosa, cuyos requisitos no fueron satisfechos.

Luego de que las partes presentaran sus escritos de réplica y dúplica, el 12 de septiembre de 2023, el Tribunal de Primera Instancia emitió otra sentencia parcial mediante la cual declaró con lugar la moción de sentencia sumaria presentada por la parte apelada[7].

Tras múltiples incidencias procesales, el 22 de abril de 2024, el Tribunal de Primera Instancia emitió otra sentencia mediante la cual acogió la solicitud de desistimiento presentada el 17 de abril de 2024[8], por el matrimonio Arroyo-Sánchez. A su vez, ordenó el cierre y archivo sin perjuicio del caso del título. Además, ordenó que se registrase y notificara nuevamente la sentencia parcial emitida el 12 de septiembre de 2023.

---

[6] Junto a su moción la parte apelada presentó los siguientes documentos: contrato de opción de compra; apéndice del recurso, a las págs. 92-94; copia del cheque #027952; *íd.*, a la pág. 95; copia de la Escritura Núm. 5; *íd.*, a las págs.96-103; copia del cheque #003062; *íd.*, a la pág. 104; copia de la Escritura Núm. 28; *íd.*, a las págs. 1-5; y copia de la Escritura Núm. 28; *íd.*, a las págs. 20-28.

[7] *Íd.*, a las págs. 120 -138. Cabe mencionar que la sentencia parcial dictada el 12 de septiembre de 2023, fue apelada ante este foro. No obstante, el recurso fue atendido como uno de *certiorari*, pues se trataba de una resolución interlocutoria. El auto de *certiorari* fue denegado. *Véase*, KLAN202300907.

[8] *Íd.*, a las págs. 139-141.

El 1 de mayo de 2024, la parte apelante presentó una moción de reconsideración respecto al desistimiento[9]. En síntesis, sostuvo que no procedía el desistimiento por no haberse cumplido con los requisitos que surgen de la Regla 39.1 de las de Procedimiento Civil, 32 LPRA Ap. V. La parte apelada se opuso a la misma el 3 de mayo de 2023[10]. Arguyó que en este caso el tribunal gozaba de discreción para ordenar el desistimiento.

El 8 de mayo de 2024, el foro primario notificó nuevamente la sentencia parcial emitida el 12 de septiembre de 2023[11]. La misma fue enmendada a los únicos fines de incluir la frase "regístrese y notifíquese".

Inconforme, el 21 de mayo de 2024, la parte apelante presentó una moción de reconsideración de la sentencia parcial enmendada y señaló que no se trataba de una sentencia final[12]. Ello, al no haberse hecho determinación alguna sobre la reconvención. El foro primario atendió el referido planteamiento mediante la resolución notificada a las partes el 14 de junio de 2024[13]. En esta ocasión, dejó sin efecto la sentencia enmendada notificada el 8 de mayo de 2024.

Finalmente, el 28 de junio de 2024, se notificó la sentencia final[14]. En ella, el Tribunal de Primera Instancia expuso las siguientes determinaciones de hechos:

> 1. Don José Santiago del Valle, también conocido como José Santiago Álvarez, su hermana doña Flora Santiago Álvarez y su sobrina Marilyn Santiago Vega eran dueños en común proindiviso de la siguiente propiedad:
>
>> RÚSTICA: Predio de terreno ubicado en el Barrio Playa Guayanés, Sector Calambreñas del término municipal de Yabucoa, Puerto Rico, con una cabida aproximada de cuatro a cuatro y media cuerdas (4 a 4½ cdas.), equivalentes a quince mil setecientos veintiún metros con sesenta centésimas de otro a diecisiete mil seiscientos ochenta y seis con ocho décimas de otro (15,721.60 a 17,686.8), en lindes por el

---

[9] *Véase,* apéndice del recurso, a las págs. 143-144.

[10] *Íd.,* a las págs. 145-147.

[11] *Íd.,* a las págs. 148-166.

[12] *Íd.,* a las págs.169-170.

[13] *Íd.,* a la pág. 171.

[14] *Íd.,* a las págs. 173-184.

Norte, con Tomás Martínez; por el Sur, con la Sucesión de Ernesto Carrasquillo; por el Este, con Antonio Roig y Sucesores; y por el Oeste, con Enrique Pérez. Transcurre por el mismo camino municipal que grava la propiedad".

2. El 16 de agosto de 2003, don José Santiago del Valle t/c/p José Santiago Álvarez y su sobrina Marilyn Santiago Vega otorgaron un Contrato de Opción a Compra de un solar de 1.4833 cuerdas, equivalentes a 5,830.243 m² a segregarse de la finca descrita con anterioridad a favor del demandado José Luis Arroyo Medina por la suma de diez mil dólares ($10,000.00). Según pactado, el señor Arroyo pagaría la suma de cinco mil dólares ($5,000.00) al momento de la firma de la opción, y los restantes cinco mil dólares ($5,000.00) al momento del otorgamiento de las correspondientes escrituras. Dicho primer pago fue realizado el mismo día (6 de agosto de 2003), y evidenciado mediante cheque de gerente número 027952 de la Cooperativa de Ahorro y Crédito de Humacao.

3. Completados los trámites de agrimensura y segregación, comparecieron José Santiago del Valle, Flora Santiago Álvarez y Marilyn Santiago Vega ante el Notario Natividad Márquez Pérez y mediante la escritura número cinco (5) de 25 de enero de 2005, venden al Sr. José Luis Arroyo y su esposa Brenda Sánchez el solar de 5,490.0228 m² por la suma pactada de diez mil dólares ($10,000.00) de los cuales ya se había pagado la mitad. En la misma escritura se segregaron cinco (5) solares y se adjudicaron las participaciones correspondientes a los vendedores.

5. A pesar de haberse otorgado la Escritura Número Cinco (5) sobre Compraventa a favor de la parte demandada José Luis Arroyo Medina y su esposa, el 25 de abril de 2005, las mismas partes comparecieron ante el mismo Notario Público y otorgaron la escritura de donación número 28 en la cual "donan" la misma finca que había sido vendida a los demandados. Nada dice esta escritura sobre dejar sin efecto la compraventa anterior.

6. Tanto en la escritura número cinco (5) como en la escritura número veintiocho (28) comparecieron como testigos de firma y lectura por el compareciente de la Primera Parte, José Santiago del Valle, también conocido como José Santiago Álvarez al no saber éste leer ni escribir, sus hijas Nilda Santiago Molina y Flor María Santiago, respectivamente.

7. Las escrituras número cinco (5) y número veintiocho (28) fueron declaradas nulas por el Tribunal mediante Sentencia Parcial final y firme.

8. El negocio de compraventa realizado entre las partes cumple con los requisitos de consentimiento, objeto y causa y está recogido en un contrato privado de compraventa que subsiste al anularse el instrumento público.

De conformidad con estos hechos y su análisis del derecho aplicable, el tribunal declaró con lugar la solicitud de sentencia sumaria presentada por el matrimonio Arroyo-Sánchez y validó el contrato de

compraventa a su favor. A su vez, reiteró lo dispuesto en su sentencia parcial del 22 de abril de 2024, mediante la cual había declarado con lugar la solicitud de desistimiento presentada por la parte apelada en cuanto a la reconvención.

Inconforme, la sucesión de José Santiago compareció y formuló los siguientes señalamientos de error:

> Erró el TPI al dictar sentencia sumaria a favor de la parte demandada cuando ya había declarado nulas las escrituras número 5 del 25 de enero de 2005 y la escritura número 28 del 25 abril de 2005, concluyendo que hubo un contrato válido de compraventa entre las partes, ignorando que dicho negocio fue dejado sin efecto al haberse otorgado una escritura de donación posterior al contrato de compraventa.

> En la alternativa erró el honorable tribunal al dictar sentencia sumaria existiendo controversias sustanciales de hechos por documentos y por declaraciones juradas contradictorias que debían ser adjudicadas en un juicio plenario y no sumariamente.

> Erró el TPI al dictar sentencia por desistimiento en cuanto a la reconvención contrario a lo que establece la Regla 39 de Procedimiento Civil.

(Énfasis omitido).

El 23 de agosto de 2024, la parte apelada presentó su alegato en oposición.

Con el beneficio de la comparecencia de las partes, resolvemos.

II

A

El Tribunal Supremo de Puerto Rico ha expresado en múltiples ocasiones que la moción de sentencia sumaria es un mecanismo procesal en nuestro ordenamiento jurídico para resolver controversias que no requieren la celebración de un juicio. *González Meléndez v. Mun. San Juan et al.,* 212 DPR 601, 610 (2023). El referido mecanismo, promueve la solución justa, rápida y económica de los litigios civiles cuando éstos no presentan controversias genuinas de hechos materiales. *Íd.*

La Regla 36.3(e) de Procedimiento Civil, 32 LPRA Ap. V, dispone que procede dictar sentencia sumaria si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las

declaraciones juradas —si las hay— u otra evidencia, demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y además, si el derecho aplicable lo justifica. *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601, 611 (2023).

Ahora bien, sobre el estándar de revisión apelativa sobre una solicitud de sentencia sumaria, este Tribunal ha establecido que el foro apelativo intermedio está limitado a: (1) considerar los documentos y argumentos que se presentaron ante el foro primario; (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) determinar si el Derecho se aplicó de forma correcta. *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601, 612 (2023).

Así, los foros apelativos estamos en la misma posición que los tribunales de primera instancia y utilizamos los mismos criterios para evaluar una solicitud de sentencia sumaria. *Íd.*

B

Valga destacar que los hechos que dieron lugar a la controversia que hoy atendemos ocurrieron durante la vigencia del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 1, *et seq.* El nuevo Código Civil de Puerto Rico, en su edición del 2020, 31 LPRA sec. 5311, *et seq.*, dispone en su Art. 1812 lo siguiente:

> Los actos y contratos celebrados bajo el régimen de la legislación anterior y que son válidos con arreglo a ella, surten todos sus efectos según la misma, con las limitaciones establecidas en este Código.
>
> Los actos y contratos celebrados bajo la legislación anterior y que resultan ineficaces bajo dicha legislación, no adquieren validez por el hecho de que este Código disponga algo distinto con relación a su eficacia.

31 LPRA sec. 11717.

Por tanto, resolvemos a tenor con las disposiciones del derogado Código Civil de Puerto Rico y su jurisprudencia interpretativa.

En lo concerniente, el Art. 1177 Código Civil de 1930 disponía sobre la instancia en que una escritura defectuosa podía ser considerada un contrato privado. Establecía que la escritura defectuosa, por incompetencia

del notario o por otra falta en la forma, tendría el concepto de documento privado, si estuviese firmada por los otorgantes. 31 LPRA sec. 3278. Al interpretar el referido artículo, el Tribunal Supremo expresó en *Sucesión de Santos v. Registrador*, 108 DPR 831, 843 (1979), que:

> el precepto recoge la denominada "teoría de conversión", mediante la cual**-- si están presentes los requisitos de consentimiento, objeto y causa—*inter partes,* el negocio puede existir,** pero frente a terceros y a los fines del Registro de la Propiedad, el negocio sólo tendrá valor si reviste la exteriorización requerida de escritura. **Es en virtud de la autorización y fe notarial, que el negocio sale de la esfera privada y se convierte en instrumento público**.

(Énfasis nuestro).

Partimos de la premisa de que la causa es un elemento constitutivo de todo contrato. Art. 1227 del Código Civil de 1930, 31 LPRA sec. 3432. La causa debe existir y debe ser lícita; es decir, no puede ser contraria a las leyes o a la moral. *Delgado Rodríguez v. Rivera Siverio*, 173 DPR 150, 160 (2008). Sin embargo, el requisito de que medie una causa contractual no impide reconocerle validez a un contrato que posea una causa falsa, entendida como una causa fingida o que encubra otra verdadera. *Íd.*, a las págs. 160-161; citando a J. Puig Brutau, *Fundamentos de Derecho Civil*, 3ra ed., Barcelona, Ed. Bosch, 1988, T. II, Vol. I, pág. 442.

El Código Civil de 1930 no regulaba la simulación de un contrato de manera expresa. No obstante, sí disponía en su Art. 1228 que "[l]a expresión de una causa falsa en los contratos daría lugar a la nulidad, si no se probase que estaban fundados en otra verdadera y lícita". 31 LPRA. sec. 3433. Sobre la base de este principio estatutario, el Tribunal Supremo de Puerto Rico le ha conferido validez a un contrato simulado que exprese una causa falsa, **siempre que se pruebe que el negocio encubre una causa verdadera y lícita.** *Delgado Rodríguez v. Rivera Siverio*, 173 DPR, a la pág. 161.

Finalmente, el Código Civil de 1930 disponía en su Art. 1253 el término prescriptivo de la acción de nulidad. 31 LPRA sec. 3512. En lo concerniente, establecía que la acción de nulidad tendría una **duración de cuatro (4) años**. El referido término comenzaría a correr, en los casos de

intimidación o violencia, desde el día en que estas hubiesen cesado; y, en los casos de error, dolo, o falsedad de la causa, desde la consumación del contrato.

C

El desistimiento se refiere a una declaración de voluntad que realiza una parte mediante la cual anuncia su deseo de abandonar la causa de acción que interpuso en el proceso que se encuentra pendiente. *Pagán Rodriguez v. Pres. Cáms. Legs.,* 206 DPR 277, 285 (2021). Esto es, a través del desistimiento, una parte en el pleito expresa su deseo de no continuar con la reclamación que interpuso. De igual forma, se ha expresado que "[e]l desistimiento encarna uno de los principios básicos del proceso [civil]: el principio dispositivo según el cual el demandante tiene derecho a disponer de su acción". *Íd.*, a la pág. 286; citando a R. Hernández Colón, *Derecho Procesal Civil*, 6ta ed., San Juan, Ed. Lexis Nexis 2017, pág. 414.

La Regla 39.1 de las de Procedimiento Civil, 32 LPRA Ap. V, regula las diferentes formas de desistimiento de las reclamaciones judiciales en el ámbito civil.  En lo pertinente a la controversia ante nos, el inciso (a) de la mencionada regla dispone las instancias en las que la parte demandante, o en este caso reconviniente*,* puede desistir de un pleito de manera voluntaria; esto es, a través de un aviso de desistimiento o mediante una estipulación de desistimiento firmada por todas las partes comparecientes. Mientras, el inciso (b) se refiere a cuando la parte demandante desiste de un pleito previa orden del tribunal.

En particular, el inciso (a) de la Regla 39.1 de las de Procedimiento Civil establece que el demandante puede renunciar a su demanda en cualquier momento previo a la notificación de la contestación de la parte adversa o de una solicitud para que se dicte sentencia sumaria. *Pagán Rodriguez v. Pres. Cáms. Legs.,* 206 DPR, a la pág. 286. También dispone que el desistimiento pudiera darse por una estipulación firmada por todos los que hayan comparecido al pleito. Así pues, en virtud de ese inciso es

suficiente la mera presentación del aviso de desistimiento ante el tribunal. *Pagán Rodriguez v. Pres. Cáms. Legs.,* 206 DPR, a la pág. 286.

Por su parte, el inciso (b) de la Regla 39.1 de Procedimiento Civil atiende las instancias no cubiertas por el inciso (a) de la regla; entiéndase, **cuando la parte adversa ha contestado la demanda o ha solicitado que se dicte sentencia sumaria, o cuando no se ha conseguido una estipulación de desistimiento suscrita por todas las partes que han comparecido al pleito**. *Pagán Rodriguez v. Pres. Cáms. Legs.,* 206 DPR, a la pág. 287. En tales casos, será necesario que la parte demandante presente una moción al tribunal, la cual deberá notificar a todas las partes que han comparecido ante el foro, para así renunciar a continuar con su reclamo. **En este escenario, el tribunal tiene discreción judicial para terminar el litigio e imponer las condiciones que estime pertinentes; entre estas, que el desistimiento sea con perjuicio e incluso que se ordene el pago de costas y honorarios de abogado**. *Íd.*

III

La contienda principal de la parte apelante es que el Tribunal de Primera Instancia incidió al dictar sentencia sumaria a favor de la parte apelada. Arguye que, contrario a lo resuelto por el foro primario, la nulidad de las Escrituras Núm. 5 y Núm. 28 acarreaba la nulidad del negocio jurídico. Además, sostiene que el contrato de opción de compra al cual aludió la parte apelada en su solicitud de sentencia sumaria no se configuró por lo que no hubo un negocio de compraventa, sino que a lo sumo se configuró una donación onerosa, que resulta nula, por no cumplir con los requisitos de forma.

De otra parte**,** propone que el foro primario también erró al dictar sentencia sumaria, pues las declaraciones juradas que presentó junto con su réplica establecían una controversia de hechos, que debía ser adjudicada en un juicio plenario.

Por su parte, la apelada sostiene que el Tribunal de Primera Instancia actuó conforme al derecho aplicable. En ánimos de prevalecer en

su argumento, resaltó los hechos incontrovertidos que tuvo ante sí el foro primario, previo a adjudicar la validez del negocio de compraventa.

Tal como discutimos, en cuanto al estándar de revisión apelativa sobre una solicitud de sentencia sumaria, nos encontramos en la misma posición que los tribunales de primera instancia. Por tanto, luego de considerar los documentos y argumentos que se presentaron ante el foro primario, nos vemos en la obligación de determinar si existe o no alguna controversia genuina de hechos materiales o esenciales, y si el derecho se aplicó de forma correcta. Por tanto, evaluada tanto la solicitud de sentencia sumaria como su oposición concluimos que no existe controversia en cuanto a los hechos que el Tribunal de Primera Instancia declaró incontrovertidos.  En atención a lo anterior, y habiéndolas transcrito en el tracto, los adoptamos como parte de esta sentencia.

Ahora bien, tras la declaración de nulidad de las Escrituras Núm. 5 y Núm. 28, correspondía al Tribunal de Primera Instancia, y ahora a nosotros, revisar si el documento privado otorgado entre las partes sostenía un negocio jurídico válido. Es decir, corroborar que en el contrato estuvieran presentes los requisitos de consentimiento, objeto y causa. Ciertamente surge de los documentos presentados que el señor José Santiago no sabía leer ni escribir. No obstante, de las declaraciones juradas suscritas por sus hijas surge la naturaleza y voluntad de este al atender sus negocios. Ante ello, no vemos razón, ni se presentó prueba en contrario, para no resolver que se trataba de un contrato válido.

De otra parte, en cuanto a la Escritura Núm. 28, el Tribunal de Primera Instancia resolvió que se trataba de un contrato simulado. Coincidimos con esta apreciación, toda vez que la presunta donación fue hecha por las mismas partes contratantes, las cuales se adjudicaron los mismos solares que se habían adjudicado en la Escritura Núm. 5. Ello, luego de haberlos segregado, de vender el mismo solar, con idéntica cabida y valor a favor de las mismas partes.

Resaltamos que en el referido documento los "donantes" afirmaron que el acto de liberalidad se hacía en consideración a las aportaciones pecuniarias y no pecuniarias de los "donatarios" en las gestiones legales y de segregación. Al reconocer que el negocio suscrito no era uno contra la moral o el orden público, el negocio que subsiste es el de la compraventa. En atención a ello, reiteramos que, para impugnar la nulidad del referido contrato, conforme a las disposiciones aplicables del Código Civil de 1930 la parte apelante tenía cuatro (4) años desde que se firmaron las escrituras objeto de controversia. Por tanto, su acción esta prescrita.

De conformidad con las conclusiones anteriores, resolvemos que la parte apelada tiene el derecho a compeler a los causahabientes de los contratantes originales a cumplir con las formalidades de ley para su plena efectividad y validez. Ello de conformidad con lo dispuesto en el Art. 1231 del Código Civil de 1930, 31 LPRA sec. 3452.

En cuanto al tercer error señalado, la parte apelante se limitó a recalcar su argumento y sostuvo que el Tribunal de Primera Instancia había errado al declarar con lugar el desistimiento en cuanto a la reconvención presentada por la parte apelada. Insistió en que una vez se sometió la alegación responsiva a la reconvención el tribunal carecía de discreción para aceptar el desistimiento, sin que mediara una estipulación firmada por las partes. No le asiste la razón.

Según esbozado, la Regla 39.1 de Procedimiento Civil, 32 LPRA Ap. V, atiende la situación en que la parte adversa ha contestado la demanda, en este caso reconvención, o ha solicitado que se dicte sentencia sumaria, **o** cuando no se ha conseguido una estipulación de desistimiento suscrita por todas las partes que han comparecido al pleito. Lo cierto es que, en tales casos, y como sucedió en esta ocasión, solo será necesario que la parte que reconvino presente una moción al tribunal. Así, cuando conste que se ha notificado a todas las partes que han comparecido ante el foro de su intención, el tribunal tendrá discreción judicial para terminar el litigio e imponer las condiciones que estime pertinentes. Ciertamente en esta

ocasión el foro primario tenía discreción para aceptar el desistimiento de la parte apelada.

IV

Por los fundamentos expuestos, **confirmamos** la sentencia apelada.

Notifíquese.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones